1

2

3

4

5

6

7

8

9                          IN THE UNITED STATES DISTRICT COURT

10                       FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12
FLORIDA RUIZ,                                    CASE NO. CV F 12-0878 LJO BAM
13
                        Plaintiff,               **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
14                                                **MOTION TO DISMISS**
            vs.                                  (Doc. 6.)
15
SUNTRUST MORTGAGE, INC.,
16  et al.,

17                      Defendants.

18  _____/

19                                  **INTRODUCTION**

20          Several defendants[1] seek to dismiss as legally barred and lacking merit plaintiff Florida Ruiz'

21  ("Ms. Ruiz'") claims to challenge foreclosure of her Bakersfield property ("property").  Ms. Ruiz

22  responds that defendants' wrongful conduct precludes foreclosure of her property.  This Court

23  considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record without a hearing, pursuant

24  to Local Rule 230(g).  For the reasons discussed below, this Court DISMISSES this action against

25  defendants.

26  _____

27          [1]        The defendants seeking F.R.Civ.P. 12(b)(6) dismissal are SunTrust Mortgage, Inc. ("SunTrust"), Mortgage
    Electronic Registration Systems, Inc. ("MERS"), and Federal National Mortgage Association ("Fannie Mae") and will be
28  referred to collectively as "defendants."

                                            1

1

## BACKGROUND[2]

2

### Ms. Ruiz' Property Loans And Foreclosure

3    On April 1, 2007, Mr. Ruiz obtained from SunTrust a $189,592 loan secured by a deed of trust

4    ("first DOT") on the property and which was recorded on April 13, 2007.[3]  The first DOT identifies

5    SunTrust as lender and MERS as nominee of SunTrust and SunTrust's successors and assigns and as

6    beneficiary under the deed of trust.

7    Also on April 1, 2007, Ms. Ruiz obtained a second $47,398 loan secured by a second deed of

8    trust on the property and which was also recorded on April 13, 2007.  That deed of trust identifies

9    SunTrust as lender and MERS as nominee of SunTrust and SunTrust's successors and assigns and

10   beneficiary under the deed of trust.

11   After Ms. Ruiz defaulted, Recontrust Company ("Recontrust") recorded a notice of default and

12   election to sell under deed of trust on May 15, 2009.  After Ms. Ruiz failed to cure her default,

13   Recontrust recorded a notice of trustee's sale on January 12, 2010.  The property was sold at foreclosure

14   on March 4, 2010, and Recontrust recorded a trustee's deed upon sale on March 12, 2010.

15   The foreclosure sale was rescinded, and a notice of rescission of trustee's deed upon sale was

16   recorded on December 8, 2011.

17   By an August 18, 2011 assignment of deed of trust, MERS assigned to SunTrust all beneficial

18   interest under the first DOT.  The assignment of deed of trust was recorded on September 2, 2011 and

19   is signed by MERS Vice President Doyle Mitchell ("Mr. Mitchell").

20   On September 16, 2011, the Wolf Law Firm recorded a second notice of default and election to

21   sell under deed of trust for the property.  The Wolf Law Firm substituted as trustee under the first DOT

22   on September 30, 2011.  The substitution of trustee was recorded on February 15, 2012.  The Wolf Law

23   Firm caused a notice of trustee's sale of the property to be recorded on February 15, 2012.

24   / / /

25

26      [2]      The factual recitation is derived generally from Ms. Ruiz' First Amended Complaint ("FAC"), the target
of defendants' challenges, as well as other matters which this Court may consider on a F.R.Civ.P. 12(b)(6) motion to dismiss.

27

28      [3]      Documents pertaining to Ms. Ruiz' loans and property foreclosure were recorded with the Kern County
Official Records.

1

**Ms. Ruiz' Claims**

2        Prior to removal to this Court, Ms. Ruiz filed her original complaint in state court on February

3  22, 2012.  Ms. Ruiz proceeds on her FAC, filed on May 14, 2012, to challenge SunTrust's authority "to

4  initiate and complete foreclosure" in that SunTrust "is neither the Promissory Note Holder, nor the actual

5  Beneficiary of the Deed of Trust."  The FAC alleges that SunTrust "cannot show proper receipt,

6  possession, transfer, negotiations, assignment and ownership of the borrowers' Promissory Note and

7  Deed of Trust."  The FAC continues that "none of the parties to neither the securitization transaction,

8  nor any of the Defendants in this case, hold a perfected and secured claim in the Property."  The FAC

9  alleges claims of wrongful foreclosure, fraud, slander of title, quiet title and California statutory

10  violations.  The claims will be discussed in greater detail below.

11

**DISCUSSION**

12

**F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards**

13        Defendants characterize the FAC's claims as lacking merit to warrant dismissal.

14        "When a federal court reviews the sufficiency of a complaint, before the reception of any

15  evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

16  a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

17  claims."  *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development

18  Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

19  a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

20  theory."  *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of

21  Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency

22  of a claim."  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

23        In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

24  the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

25  can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

26  F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

27  are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead

28  Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

3

assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in

4

1   a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of
2   a cause of action, supported by mere conclusory statements, do not suffice. . . . Second,
    only a complaint that states a plausible claim for relief survives a motion to dismiss. . .
3   . Determining whether a complaint states a plausible claim for relief will . . . be a
    context-specific task that requires the reviewing court to draw on its judicial experience
4   and common sense. . . . But where the well-pleaded facts do not permit the court to infer
    more than the mere possibility of misconduct, the complaint has alleged – but it has not
5   "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

6           In keeping with these principles a court considering a motion to dismiss can
    choose to begin by identifying pleadings that, because they are no more than conclusions,
    are not entitled to the assumption of truth. While legal conclusions can provide the
7   framework of a complaint, they must be supported by factual allegations. When there are
    well-pleaded factual allegations, a court should assume their veracity and then determine
8   whether they plausibly give rise to an entitlement to relief.

9   *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

10          Moreover, a court may consider exhibits submitted with the complaint. *Durning v. First Boston*

11  *Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162,

12  n. 2 (C.D. Cal. 2003).   A "court may consider evidence on which the complaint 'necessarily relies' if:

13  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no

14  party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d

15  445, 448 (9th Cir. 2006).   A court may treat such a document as "part of the complaint, and thus may

16  assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States*

17  *v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).   Such consideration prevents "plaintiffs from surviving a

18  Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are

19  based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[4]   A "court may disregard allegations

20  in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck*

21  *Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston*

22  *Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

23          With these standards in mind, this Court turns to defendants' challenges to the FAC's claims.

24                                  **Failure To Tender**

25          The FAC's claims challenge foreclosure of the property.  In particular, the FAC's (first) wrongful

26
27          [4]         "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim
    depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not
    dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document
28  in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

foreclosure claim alleges that SunTrust "does not have the authority to initiate foreclosure as it is not truly the beneficiary of the Deed of Trust" and "lacks the authority to foreclose on the Plaintiff's Property as it is not the Beneficiary of the Deed of Trust." The claim appears to rest on Ms. Ruiz' assertion that MERS, not Suntrust, is the first DOT beneficiary and "Suntrust does not have the authority to tell Defendant Wolf Firm to initiate foreclosure."

Defendants contend that the FAC's claims challenging foreclosure sale are barred by Ms. Ruiz' failure to tender amounts owed on her loans. Mr. Ruiz responds that "[i]t would be inequitable to require the Plaintiff to tender to an entity that does not have the right to foreclose."

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)). "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997). In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

> . . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." . . . The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs. (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes. *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971). The basic rule is that an offer of performance is of no

1   effect if the person making it is not able to perform.  *Karlsen*, 15 Cal.App.3d at 118, 92 Cal.Rptr. 851

2   (citing Cal. Civ. Code, § 1495).  Simply put, if the offeror "is without the money necessary to make the

3   offer good and knows it" the tender is without legal force or effect.  *Karlsen*, 15 Cal.App.3d at 118, 92

4   Cal.Rptr. 851 (citing several cases).  "It would be futile to set aside a foreclosure sale on the technical

5   ground that notice was improper, if the party making the challenge did not first make full tender and

6   thereby establish his ability to purchase the property."  *United States Cold Storage v. Great Western*

7   *Savings & Loan Assn.,* 165 Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).  "A cause of action

8   'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid

9   tender."  *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.  "Plaintiff's failure to allege

10  that he has tendered or can tender the amount of his indebtedness renders his wrongful foreclosure claim

11  deficient."  *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1270 (C.D. Cal. 2010).

12      "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without

13  paying the debt secured."  *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v.*

14  *Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain

15  an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475,

16  477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").  "A party

17  may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of

18  trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations

19  has run against the indebtedness."  *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

20      Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do

21  equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the

22  plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter

23  into the contract by the fraudulent representations of the defendant."  *Fleming v. Kagan*, 189 Cal.App.2d

24  791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing

25  is essential to an action to cancel a voidable sale under a deed of trust."  *Karlsen,* 15 Cal.App.3d at 117,

26  92 Cal.Rptr. 851.  Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common

27  law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial

28  foreclosure sales."  *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820,

1   821, 134 Cal.Rptr.2d 162 (2003).

2       "The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105

3   Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003).  "The tenderer must do and offer everything that is

4   necessary on his part to complete the transaction, and must fairly make known his purpose without

5   ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is

6   made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154,

7   1165, 246 Cal.Rptr. 421 (1988).   The debtor bears "responsibility to make an unambiguous tender of

8   the entire amount due or else suffer the consequence that the tender is of no effect."  *Gaffney*, 200

9   Cal.App.3d at 1165, 246 Cal.Rptr. 421.

10       Defendants are correct that the "tender rule" applies "to any causes of action that derive from the

11   wrongful foreclosure allegations or seek redress from foreclosure."   Neither the FAC nor record

12   references Ms. Ruiz' tender of indebtedness or meaningful ability to do so.  In fact, the record reflects

13   Ms. Ruiz' defaults and failure to cure them to indicate an inability to tender amounts owed on her loans.

14   In addition, Mr. Ruiz fails to substantiate inapplicability of the tender rule based on MERS' status and

15   inequity to require tender.  Inequity results with Mr. Ruiz' attempts to thwart defendants' foreclosure

16   rights given her continuing default.  Without Ms. Ruiz' meaningful tender, Ms. Ruiz seeks empty

17   remedies, not capable of being granted, to support dismissal of the FAC's claims seeking to challenge

18   foreclosure.

19                                  **Foreclosure Proceedings**

20       Defendants challenge the FAC's allegations regarding foreclosure or related irregularities.

21       Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of

22   trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished

23   in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust,

24   thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of

25   the loan." *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).  A

26   deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid." *Alliance*

27   *Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

28       If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender

8

may non-judicially foreclose.  *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930). The California Court of Appeal has explained non-judicial foreclosure under the applicable California Civil Code sections:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

Non-judicial foreclosure sales "are governed by a 'comprehensive' statutory scheme. This scheme, which is found in Civil Code sections 2924 through 2924k, evidences a legislative intent that a sale which is properly conducted 'constitutes a final adjudication of the rights of the borrower and lender.'" *Royal Thrift and Loan Co. v. County Escrow, Inc.*, 123 Cal.App.4th 24, 32, 20 Cal.Rptr.3d 37 (2004) (quoting  *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.,* 85 Cal.App.4th 1279, 1283-1284, 102 Cal.Rptr.2d 711, fn. omitted (2001)).

Under subparagraph (a)(1) of California Civil Code section 2924 ("section 2924"), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process.  Under section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee."  "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

 "A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777.  "As a general rule, a trustee's sale is complete upon acceptance of the final bid." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003).  "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is

conclusive as to a bona fide purchaser." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted). "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'" *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)). "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity." *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

To challenge foreclosure, "it is necessary for the complaint to state a case within the code sections for which reason it is essential to allege the facts affecting the validity and invalidity of the instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940). A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970). As the California Supreme Court explained decades ago:

> It is the general rule that courts have power to vacate a foreclosure sale where there has been fraud in the procurement of the foreclosure decree or where the sale has been improperly, unfairly or unlawfully conducted, or is tainted by fraud, or where there has been such a mistake that to allow it to stand would be inequitable to purchaser and parties. Sham bidding and the restriction of competition are condemned, and inadequacy of price when coupled with other circumstances of fraud may also constitute ground for setting aside the sale.

*Bank of America Nat. Trust & Savings Ass'n v. Reidy*, 15 Cal.2d 243, 248, 101 P.2d 77 (1940).

### *Robo-Signing*

The FAC makes references to robo-signing loan and foreclosure documents and identifies Mr. Mitchell as a "robo-signer." Defendants characterize such allegations as "nonsensical" to the effect that Ms. Ruiz seeks to sue defendants because "they forged their own signatures on documents to which she was not even a party." Defendants contend that the FAC "fails to establish how [Ms. Ruiz] has standing to challenge the validity of an agent's signature on any of the recorded documents." Defendants note that "[t]here is no requirement that nonjudicially foreclosing parties 'prove' their authority to foreclose." Defendants further challenge "robo-signing allegations" as conclusory. *See Cerecedes v. U.S. Bankcorp*, 2011 WL 1666938, at *4 (C.D. Cal. 2011) ("generic allegations of robo-signing and other unspecified irregularities are insufficient to place defendants on notice of how defendants violated those statutes").

10

1    The FAC lacks legally cognizable claims based on "robo-signing." "Robo-signing" allegations

2 fail to establish a necessary statutory violation for wrongful foreclosure. The FAC fails to establish how

3 alleged "robo-signing" precludes foreclosure of the property.

4    ***Standing To Foreclose***

5    Defendants fault that FAC's attempt to challenge standing to foreclose. Defendants note that the

6 Wolf Law Firm recorded the second notice of default as an authorized agent for MERS as first DOT

7 beneficiary. Defendants continue that after the Wolf Law Firms substituted as trustee, it recorded a

8 trustee's sale notice. A trustee's duties include "to initiate nonjudicial foreclosure on the property upon

9 the trustor's default, resulting in a sale of the property." *Kachlon v. Markowitz*, 168 Cal.App.4th 316,

10 334, 85 Cal.Rptr.3d 532 (2008). Defendants explain that MERS as beneficiary properly substituted the

11 Wolf Law Firm as trustee to initiate foreclosure. "The beneficiary may make a substitution of trustee

12 . . . to conduct the foreclosure and sale." *Kachlon*, 168 Cal.App.4th at 334, 85 Cal.Rptr.3d 532.

13    Ms. Ruiz claims to challenge MERS' authority to assign the first DOT on August 18, 2011

14 because "both the Promissory Note and Deed of Trust are extinguished" at the March 4, 2010 trustee's

15 sale. Mr. Ruiz asserts "when MERS attempted to assign the Deed of Trust to Defendant Suntrust . . .

16 , there was nothing to assign."

17    The FAC raises no legitimate grounds to challenge standing to foreclose on the property. The

18 March 4, 2010 trustee's sale was rescinded to render it a nullity. The FAC points to no statutory

19 irregularities to disrupt standing to foreclose. The FAC's standing allegations are unavailing.

20    ***Securitization***

21    Defendants challenge the FAC's allegations that securitization of Ms. Ruiz' loans was unlawful

22 to preclude foreclosure. Defendants note that sale of Ms. Ruiz' loans had "no effect on her obligations."

23 The "request for declaratory relief is based on the erroneous theory that all defendants lost their power

24 of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool. This

25 argument is both unsupported and incorrect." *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d

26 1039, 1043 (N.D. Cal. 2009). "[C]ourts have uniformly rejected that securitization of a mortgage loan

27 provides the mortgagor a cause of action." *Velez v. The Bank Of New York Mellon*, 2011 WL 572523,

28 at *4 (D. Hi. 2011) ("The court also rejects Plaintiff's contention that securitization in general somehow

1   gives rise to a cause of action – Plaintiff points to no law or provision in the mortgage preventing this

2   practice, and otherwise cites to no law supporting that securitization can be the basis of a cause of

3   action."

4   Defendants are correct that securitization of Ms. Ruiz' loans does not diminish the underlying

5   power of sale upon Ms. Ruiz' default.  The FAC's securitization allegations fail to support a necessary

6   irregularity to question foreclosure of the property.   Ms. Ruiz' opposition papers concede that

7   "securitization has no affect [sic] on the power of sale clause on a deed of trust."

8   ### *Note Possession*

9   Defendants further attack FAC allegations that foreclosure is dependent on possession of Ms.

10   Ruiz' original notes as well as joint possession of the notes and deeds of trust.

11    "Under California law, there is no requirement for the production of an original promissory note

12   prior to initiation of a nonjudicial foreclosure. . . . Therefore, the absence of an original promissory note

13   in a nonjudicial foreclosure does not render a foreclosure invalid."  *Pantoja v. Countrywide Home*

14   *Loans, Inc.*, 640 F.Supp.2d 1177, 1186 (N.D. Cal. 2009).  "Pursuant to section 2924(a)(1) of the

15   California Civil Code, the trustee of a Deed of Trust has the right to initiate the foreclosure process.

16   Production of the original note is not required to proceed with a non-judicial foreclosure." *Hafiz*, 652

17   F.Supp.2d at 1043 (citation omitted).

18   "Under Civil Code section 2924, no party needs to physically possess the promissory note."

19   *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, §

20   2924(a)(1)).  Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and

21   election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.  "The trustee has

22   the power and the duty to initiate foreclosure proceedings on the property upon the trustor's default,

23   resulting in a sale of the property." *Hafiz*, 652 F.Supp.2d at 1043 (citation omitted).  An "allegation that

24   the trustee did not have the original note or had not received it is insufficient to render the foreclosure

25   proceeding invalid." *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

26   Defendants are correct that inclusion of Ms. Ruiz' promissory notes in an investor pool did not

27   preclude foreclosure.  The FAC's references to separating Mr. Ruiz' promissory notes from deeds of

28   trust are unavailing given the absence of need to produce original promissory notes.  The clear authority

is that production of original promissory notes is unnecessary to initiate foreclosure.  FAC allegations that defendants violated their pooling and service agreement ("PSA") are insufficient given Ms. Ruiz is not a PSA party and lacks grounds to enforce PSA provisions.

Moreover, Ms. Ruiz fails to substantiate her claim that "assignment of a Deed of Trust separate from the Promissory Note is not a valid assignment" and that "only the holder of the promissory note can foreclose."  The authorities discussed above demonstrate the contrary.

### *MERS Authority*

Defendants further challenge FAC allegations to the effect that MERS lacked authority to execute documents to render the documents fraudulent.  Defendants note the absence of facts to support Ms. Ruiz' prejudice from foreclosure irregularities.

The California Court of Appeal has explained that prejudice is required for a wrongful foreclosure claim:

> We also note a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. . . . Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. . . . If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note.

*Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272, 129 Cal.Rptr.3d 467 (2011); *see Knapp v. Doherty*, 123 Cal.App.4th 76, 86, n. 4, 20 Cal.Rptr.3d 1 (2004) ("A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure and the resulting prejudice.'"); *Angell v. Superior Court,* 73 Cal.App.4th 691, 700, 86 Cal.Rptr.2d 657 (1999) (failure to comply with procedural requirements must cause prejudice to plaintiff).

Prejudice is not presumed from "mere irregularities" in the process. *Meux v. Trezevant*, 132 Cal. 487, 490, 64 P. 848 (1901).

The FAC lacks allegations of requisite prejudice to Ms. Ruiz in connection with foreclosure, especially given her inability to tender amounts owed on her loans or to cure her defaults.  Moreover,

13

the first DOT empowers MERS "to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender . . ." The FAC alleges no defect as to MERS to preclude foreclosure, especially given the absence of prejudice to Ms. Ruiz.

**Fraud**

The FAC's (second) fraud claim alleges that Mr. Mitchell signed the first DOT assignment claiming to be a MERS vice president although Mr. Mitchell is a SunTrust employee. The fraud claim references "forged or fraudulently signed" documents. Ms. Ruiz' opposition papers accuse SunTrust and MERS of fraudulently recording documents "alleging an ownership interest in Plaintiff's Property."

Defendants challenge the absence of facts to support fraud elements and to satisfy F.R.Civ.P. 9(b) pleading requirements.

***Fraud Elements***

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996). The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336. "The absence of any one of these required elements will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231 Cal.Rptr. 355 (1986).

/ / /

/ / /

14

***Particularity Pleading Standard***

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[5] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[6] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have

---

[5]     F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

[6]     "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . .   The plaintiff must set forth what is false or misleading about a statement, and why it is false.  In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .

In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

In a fraud action against a corporation, a plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861 (1991).

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers*

*of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

Defendants fault the FAC's failure to identify "any specific misrepresentation" made to Ms. Ruiz and the absence of facts that Mr. Mitchell fraudulently signed documents and misrepresented that he was a MERS assistant vice president. Defendants challenge the FAC's failure to satisfy F.R.Civ.P. 9(b)'s heightened pleading standards given the FAC's formulaic allegations "without any factual specificity." Defendants question how Ms. Ruiz' reliance on defendants' representations damaged Ms. Ruiz in the absence of her ability to challenge foreclosure and failure to satisfy loan obligations to avoid foreclosure.

Defendants raise valid points to attack the fraud claim which is subject to dismissal. The FAC lacks facts to identify specific statements, who made statements, authority to make statements, and when statements were made to satisfy fraud elements and F.R.Civ.P. 9(b) requirements. Ms. Ruiz' references to purported "robo-signing" and forgery are unavailing, especially given the absence of facts to support her justifiable reliance. The FAC's conclusory allegations fail to meet Rule 9(b)'s strict standard. The FAC lacks precise allegations to identify what defendants, through specifically identified and authorized agents or representatives, allegedly promised or represented to result in damage to Ms. Ruiz. Ms. Ruiz ignores that her default resulted in initiation of property foreclosure. The FAC lacks facts to support fraud elements let alone the who, what, when, when and how of alleged misconduct and the heightened federal pleading standard. The FAC's incomplete allegations are insufficient to warrant dismissal of the FAC claims sounding in fraud.

### Slander Of Title

The FAC's (third) slander of title claim alleges that defendants "disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of the documents, including, but not limited to, the Notice of Trustee's Sale, and Trustee's Deed." The claim further alleges that defendants "knew of should have know that such documents were improper in that at the time of execution and delivery of said documents, Defendants had no right, title or interest in the Property." In her opposition papers, Mr. Ruiz claims that the second notice of default and election to sell under deed of trust, recorded on September 16, 2011, "was without effect and fraudulent" and "SunTrust knew it was fraudulent at the time it was filed."

17

1    The elements of slander of title are: (1) publication; (2) falsity; (3) absence of privilege; and (4)

2  disparagement of another's land which is relied upon by a third party and which results in a pecuniary

3  loss. *Appel v. Burman*, 159 Cal.App.3d 1209, 1214, 206 Cal.Rptr. 259 (1984).

4    Defendants fault the FAC's absence of facts to support slander of title elements in that the FAC

5  fails to address how recorded documents were false given Ms. Ruiz' acknowledged default. Defendants

6  point to the privileged nature of recording, mailing and delivering foreclosure notices. Section 2924(d)

7  renders as California Civil Code section 47 "privileged communications" the "mailing, publication, and

8  delivery" of foreclosure notices and "performance" of foreclosure procedures. "[W]e conclude that the

9  protection granted to nonjudicial foreclosure . . . is the qualified common interest privilege of section

10  47, subdivision (c)(1)." *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 341, 85 Cal.Rptr.3d 532 (2008);

11  *see Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1018 (N.D. Cal. 2009) (conduct is

12  "protected by the qualified privilege of § 47(c) so long as . . . not malicious"); *see also Hagberg v.*

13  *California Federal Bank FSB*, 32 Cal.4th 350, 361 81 P.3d 244 (2004) ("As noted, the only tort claim

14  we have identified as falling outside the privilege established by section 47(b) is malicious

15  prosecution.").

16    Defendants continue that foreclosure notices do not slander title in that they do not disparage

17  land. *See Ortiz v. Accredited Home Lenders, Inc.*, 639 F.Supp.2d 1159, 1168 (S.D. Cal. 2009) ("The

18  recorded foreclosure Notices do not affect Plaintiffs' title, ownership, or possession in the Property.")

19  Lastly, defendants note the FAC's absence of allegations of how Ms. Ruiz' reliance on foreclosure

20  documents caused her pecuniary loss.

21    Defendants are correct that the FAC lacks facts to support slander of title elements. The

22  recording, mailing and delivery of foreclosure documents are privileged to negate a necessary element

23  of the claim. Ms. Ruiz can plead no facts to revive a slander of title claim.

### Quiet Title

25    The FAC's (fourth) quiet title claim seeks this Court's declaration that Ms. Ruiz is the property's

26  "title owner of record" and to quiet title in Ms. Ruiz "as of the date on which is [sic] loan transaction

27  was consumed."

28    Defendants challenge the quiet title claim's failure to satisfy statutory and tender requirements.

1    California Code of Civil Procedure section 760.010 provides for an action "to establish title

2    against adverse claims to real or personal property or any interest therein."  California Code of Civil

3    Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

4         1.    A legal description and street address of the subject real property;

5         2.    The title of plaintiff as to which determination is sought and the basis of the title;

6         3.    The adverse claims to the title of the plaintiff against which a determination is sought;

7         4.    The date as of which the determination is sought; and

8         5.    A prayer for the determination of the title of the plaintiff against the adverse claims.

9    The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or

10   proceeding provided by law for establishing or quieting title to property."  Cal. Code Civ. Proc., §

11   760.030.

12        The FAC is unverified and lacks the property's legal description and facts as to the title of which

13   Ms. Ruiz seeks determination and the basis of Ms. Kham's purported title given her inability to tender

14   amounts due on their loans.  A quiet title claim requires an allegation that the plaintiffs "are the rightful

15   owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *See Kelley*

16   *v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009).

17   Defendants correctly question the FAC's reference to April 1, 2007, the date of loan consummation, as

18   the date for quiet title purposes.  The FAC lacks facts that Ms. Ruiz is the property's rightful owner, has

19   satisfied DOT obligations and thus lacks a properly pled quiet title claim.

20        Moreover, a purported quiet title claim is doomed in the absence of a tender of amounts owed.

21   "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying

22   the debt secured."  *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934).  "A party may not

23   without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or

24   have his title quieted against the purchaser at such a sale, even though the statute of limitations has run

25   against the indebtedness."  *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see Mix*

26   *v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not

27   maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39

28   Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his

19

1    debt.  The cloud upon his title persists until the debt is paid.").

2         "A valid and viable tender of payment of the indebtedness owing is essential to an action to

3    cancel a voidable sale under a deed of trust."  *Karlsen,* 15 Cal.App.3d at 117,  92 Cal.Rptr. 851.  An

4    "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action

5    which a court of equity would recognize."  *Copsey v. Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7

6    (1901).

7         Ms. Ruiz is unable to quiet title in her favor without paying or tendering her outstanding

8    indebtedness.  With the FAC's absence of a meaningful ability or willingness to tender the indebtedness,

9    a purported quiet title claim fails.  This Court is not in a position to award Ms. Ruiz a windfall.

10        Lastly, defendants are correct that given the rescission of the foreclosure sale, defendants do not

11   assert a right to title and Ms. Ruiz effectively seeks to quiet title against herself.  The quiet title claim

12   fails and is subject to dismissal.

13                                **Declaratory Relief**

14        The FAC's (fifth) declaratory relief claim alleges that defendants "do not have authority to

15   foreclose upon and sell the Property" and seeks "a judicial determination of the rights, obligations and

16   interest of the parties with regard to the Property."

17        Defendants contend that Ms. Ruiz is not entitled to declaratory relief.  Mr. Ruiz's response is

18   confusing.  Her opposition papers state: "Declaratory Relief fail [sic] because they are based on the same

19   cause of action that Defendants lack the standing to foreclose."

20        The FAC lacks a viable declaratory relief claim.  The Declaratory Judgment Act ("DJA"), 28

21   U.S.C. §§ 2201, 2202, provides in pertinent part:

22              In a case of actual controversy within its jurisdiction . . . any court of the United
           States, upon the filing of an appropriate pleading, may declare the rights and other legal
23         relations of any interested party seeking such declaration, whether or not further relief
           is or could be sought.  Any such declaration shall have the force and effect of a final
24         judgment or decree and shall be reviewable as such.

25   28 U.S.C. §2201(a).

26        The DJA's operation "is procedural only."  *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,

27   300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery."

28   *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA

1  "merely offers an *additional remedy* to litigants."  *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21

2  (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is

3  a case of actual controversy within its jurisdiction."  *American States Ins. Co. v. Kearns*, 15 F.3d 142,

4  143 (9th Cir. 1994).

5       Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying

6  and settling the legal relations in issue, and (2) when it will terminate and afford relief from the

7  uncertainty, insecurity, and controversy giving rise to the proceeding."  *Bilbrey by Bilbrey v. Brown*, 738

8  F.2d 1462, 1470 (9th Cir.1984).

9       As to a controversy to invoke declaratory relief, the question is whether there is a "substantial

10  controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant

11  the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270,

12  273, 61 S.Ct. 510, 512 (1941).  The U.S. Supreme Court has further explained:

13       A justiciable controversy is thus distinguished from a difference or dispute of a
         hypothetical or abstract character; from one that is academic or moot. . . . The

14       controversy must be definite and concrete, touching the legal relations of parties having
         adverse legal interests. . . . It must be a real and substantial controversy admitting of

15       specific relief through a decree of a conclusive character, as distinguished from an
         opinion advising what the law would be upon a hypothetical state of facts.

16

17  *Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

18       The failure of the FAC's claims as a whole demonstrates the absence of an actual controversy

19  subject to declaratory relief.  A declaratory relief action "brings to the present a litigable controversy,

20  which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*,

21  655 F.2d 938, 943 (9th Cir. 1981).  As an  equitable remedy, declaratory relief is "dependent upon a

22  substantive basis for liability" and has "no separate viability" if all other causes of action are barred.

23  *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3, 98 Cal.Rptr.2d 661 (2000).

24       In the absence of a viable claim, the FAC fails to support declaratory relief.  The FAC presents

25  no litigable controversy to be tried in the future.  The declaratory relief claim is subject to dismissal.

26  **California Civil Code Section 2932.5**

27       The FAC's sixth claim appears to allege violation of California Civil Code section 2932.5

28  ("section 2932.5") and notes that "Fannie Mae never recorded its interest in the Deed of Trust and cannot

21

foreclose on the Plaintiff's Property."  Defendants construe the claim to allege wrongful foreclosure in absence of a first DOT assignment prior to foreclosure.

Section 2932.5 addresses power of sale under an assigned mortgage and provides:

> Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument.  The power of sale may be exercised by the assignee if the assignment is duly acknowledge and recorded.

Defendants argue that deed of trust assignment is not necessary to validate nonjudicial foreclosure in that "by law, the security follows the transfer of the note."  California Civil Code section 2936 provides: "The assignment of a debt secured by mortgage carries with it the security."  Defendants point out that a deed of trust assignment provides public notice of transfer in the beneficial interest but is not required for judicial foreclosure in that the trustee or an authorized agent may initiate foreclosure.  Defendants are correct.  As a reminder, section 2924b(4) provides that a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee."   Defendants are further correct that Ms. Ruiz, as a defaulted borrower, lacks standing to challenge transfer of the first DOT.  Ms. Ruiz offers nothing to support a section 2932.5 claim.

### Unfair Competition Claim

The FAC's seventh claim purports to allege violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq.  The claim alleges that:

1.    Defendants "procured or offered false or fraudulently prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the PSA";

2.    "MERS lacked authority to execute an assignment of the Deed of Trust from the original beneficiary to Defendants";

3.    MERS and SunTrust "had knowledge that no such authority was ever bestowed upon it by the original lender, yet Defendant SunTrust still caused to be recorded the false documents with the county recorder"; and

4.    The "assignment of the Deed of Trust recorded is signed by an individual purporting to

be the 'Vice-President' of Defendant MERS" and "this individual did not have the authority or capacity to sign on behalf of Defendant MERS to cause the assignment."

Defendants fault the FAC's lack of facts to substantiate that defendants committed a UCL violation. Defendants note that their PSA compliance is irrelevant in that Ms. Ruiz is not a PSA party. Defendants challenge the FAC's identifying conduct subject to the UCL given the FAC's vague references to "fraudulent" recording and preparation of documents. Defendants point to the absence of facts that recorded documents were fraudulently signed given the conclusory allegation that "this individual did not have the authority or capacity to sign on behalf of Defendant MERS to cause the assignment."

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200). The UCL establishes three varieties of unfair competition – "acts or practices which are unlawful, or unfair, or fraudulent." *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000). An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale,* 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811, 602 P.2d 731 (1979)). "A business practice is 'unlawful' if it is 'forbidden by law.'" *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999). The UCL "thus creates an independent action when a business practice violates some other law." *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79. According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992).

A fellow district court has explained the borrowing of a violation of law other than the UCL:

To state a claim for an "unlawful" business practice under the UCL, a plaintiff

23

1
2
3
4
5
6

> must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

7   *Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008).

8   "Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law,

9   or violates the policy or spirit of one of those laws because its effects are comparable to or the same as

10  a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech*

11  *Communications*, 20 Cal.4th 163 at187, 83 Cal.Rptr.2d 548. The "unfairness" prong of the UCL "does

12  not give the courts a general license to review the fairness of contracts." *Samura v. Kaiser Found.*

13  *Health Plan*, 17 Cal.App.4th 1284, 1299 & n. 6, 22 Cal.Rptr.2d 20 (1993).

14  The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members

15  of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.,*

16  178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be

17  deceived," *Medical Instrument Development Laboratories v. Alcon Laboratories*, 2005 WL 1926673,

18  at *5 (N.D. Cal. 2005).

19  "A plaintiff alleging unfair business practices under these statutes [UCL] must state with

20  reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's*

21  *of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993).

22  The FAC fails to establish that defendants engaged in unlawful, unfair or fraudulent business

23  practices under the UCL. In the absence of violation of a borrowed law, a UCL claim fails in that it

24  cannot rest on purported deficiencies in foreclosure or related matters. The FAC lacks viable statutory

25  or common law claims and lacks reasonable particularity of facts to support a UCL claim. Reliance on

26  other invalid claims or "robo-signing" fails to support a viable UCL claim. Furthermore, the FAC lacks

27  particularity of fraudulent circumstances, such as a misrepresentation, for a UCL claim, especially given

28  failure of fraud-sounding claims, as discussed above. The FAC lacks facts to describe how consumers

1    were deceived and to hint at a wrong subject to the UCL to warrant the UCL claim's  dismissal.

2          Defendants also challenge the FAC's failure to allege that Ms. Ruiz suffered an injury cognizable

3    under the UCL.

4          California Business and Professions Code section 17204 limits standing to bring a UCL claim

5    to specified public officials and a private person "who has suffered injury in fact and has lost money or

6    property as a result of the unfair competition."  "This provision requires [plaintiff] to show that she has

7    lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution,

8    *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60 (9th Cir.2009), and also requires a 'causal connection'

9    between [defendant's] alleged UCL violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal.App.4th

10    847, 70 Cal.Rptr.3d 466, 471–72 (2008)."  *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-1205 (9[th]

11    Cir. 2010).

12          Business and Professions Code section 17203 addresses UCL relief and provides in pertinent

13    part:

14               Any person who engages, has engaged, or proposes to engage in unfair
           competition may be enjoined in any court of competent jurisdiction. The court may make

15           such orders or judgments . . . as may be necessary to restore to any person in interest any
           **money or property**, real or personal, which may have been acquired by means of such

16           unfair competition.  (Bold added.)

17          "In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's

18    remedies are 'generally limited to injunctive relief and restitution.'"  *Kasky v. Nike, Inc.*, 27 Cal.4th 939,

19    950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular*

20    *Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

21          Defendants correctly note the FAC's absence of facts of Ms. Ruiz' money or property allegedly

22    lost due to a UCL violation or unfair competition given that her alleged damages are "self-inflicted" and

23    arise from her default.  The property's purported decrease in value is not attributable to defendants.

24    Defendants are correct that the FAC fails to establish a causal connection between purported fraudulent

25    documents and Ms. Ruiz' injury.  The FAC lacks facts to support plaintiffs' standing to seek UCL relief

26    to warrant dismissal of the UCL claim.

27                      **Punitive Damages**

28          Defendants further seek to strike, pursuant to F.R.Civ.P. 12(f), the FAC's punitive damages

allegations in the absence of sufficient supporting allegations.  This Court will analyze defendants'

request to strike punitive damages allegations under F.R.Civ.P. 12(b)(6) standards given the decision

of *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 971 (9th Cir. 2010) ("We therefore hold that Rule

12(f) does not authorize district courts to strike claims for damages on the ground that such claims are

precluded as a matter of law.") The FAC makes sporadic references punitive damages, and its prayer

seeks punitive damages.

California Civil Code section 3294 ("section 3294") provides that in an action "for breach of an

obligation not arising from contract," a plaintiff may seek punitive damages "where it is proven by clear

and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ.

Code, § 3294(a).  Section 3294(c)(1)–(3) defines:

1.   "Malice" as "conduct which is intended by the defendant to cause injury to the plaintiff
     or despicable conduct which is carried on by the defendant with a willful and conscious
     disregard of the rights and safety of others";

2.   "Oppression" as "despicable conduct that subjects a person to cruel and unjust hardship
     in conscious disregard of that person's rights"; and

3.   "Fraud" as "an intentional misrepresentation, deceit, or concealment of a material fact
     known to the defendant with the intention on the part of the defendant of thereby
     depriving a person of property or legal rights or otherwise causing injury."

"Although the court will apply the substantive law embodied in section 3294, 'determinations

regarding the adequacy of pleadings are governed by the Federal Rules of Civil Procedure.'"  *Jackson*

*v. East Bay Hosp.*, 980 F.Supp. 1341, 1353 (N.D. Cal. 1997).

Punitive damages are "available to a party who can plead and prove the facts and circumstances

set forth in Civil Code section 3294."  *Hilliard v. A.H. Robbins Co.*, 148 Cal.App.3d 374, 392, 196

Cal.Rptr. 117 (1983).  "To support punitive damages, the complaint . . . must allege ultimate facts of the

defendant's oppression, fraud, or malice."  *Cyrus v. Haveson*, 65 Cal.App.3d 306, 316-317, 135 Cal.Rptr.

246 (1976).  Pleading the language in section 3294 "is not objectionable when sufficient facts are alleged

to support the allegation."  *Perkins v. Superior Court*, 117 Cal.App.3d 1, 6-7, 172 Cal.Rptr. 427 (1981).

In *G.D. Searle & Co. v. Superior Court*, 49 Cal.App.3d 22, 29, 122 Cal.Rptr. 218 (1975), the

California Court of Appeal explained punitive damages pleading:

> When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure. . . . When nondeliberate injury is charged, allegations that the defendant's conduct was wrongful, willful, wanton, reckless or unlawful do not support a claim for exemplary damages; such allegations do not charge malice. . . . When a defendant must produce evidence in defense of an exemplary damage claim; fairness demands that he receive adequate notice of the kind of conduct charged against him.  (Citations omitted.)

"Allegations that the acts . . . were 'arbitrary, capricious, fraudulent, wrongful and unlawful,' like other adjectival descriptions of such proceedings, constitute mere conclusions of law . . ." *Faulkner v. California Toll Bridge Authority*, 40 Cal.2d 317, 329, 253 P.2d 659 (1953); *see Letho v. Underground Construction Co.*, 69 Cal.App.3d 933, 944, 138 Cal.Rptr. 419 (1997) (facts and circumstances of fraud should be set out clearly, concisely, and with sufficient particularity to support punitive damages); *Smith v. Superior Court*, 10 Cal.App.4th 1033, 1042, 13 Cal.Rptr.2d 133 (1992) (punitive damages claim is insufficient in that it is "devoid of any factual assertions supporting a conclusion petitioners acted with oppression, fraud or malice."); *Brousseau v. Jarrett*, 73 Cal.App.3d 864, 872, 141 Cal.Rptr. 200 (1977) ("conclusory characterization of defendant's conduct as intentional, willful and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294").

Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases.  *Henderson v. Security Pacific National Bank*, 72 Cal.App.3d 764, 771, 140 Cal.Rptr. 388 (1977).

Defendants are correct that the FAC seeks punitive damages based on vague, conclusory allegations and lacks facts that defendants acted with requisite malice, oppression or fraud to support punitive damages claims.  The FAC merely makes stray references to "fraudulent, oppressive, and malicious" with no facts to support such conclusions.  The FAC lacks sufficient allegations of defendants' wrongdoing to impose punitive damages on defendants.  Moreover, dismissal of plaintiffs' claims warrants dismissal of punitive damages claims.

**Attempt At Amendment**

As discussed above, the FAC's global claims are barred legally and as insufficiently pled, and Ms. Ruiz is unable to cure the FAC's claims by allegation of other facts and thus is not granted an

attempt to amend.  Moreover, this Court surmises that Ms. Ruiz brought this action in absence of good

faith and seeks to exploit the court system to delay or to vex defendants' foreclosure of the property.

Mr. Ruiz' unsuccessful attempt to remand this action bolsters such conclusion.   The test for

maliciousness is a subjective one and requires the court to "determine the . . . good faith of the

applicant."  *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795

F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has

inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of

good faith or malice also can be inferred from a complaint containing untrue material allegations of fact

or false statements made with intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th

Cir. 1984).  An attempt to vex or delay provides further grounds to dismiss this action.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.  DISMISSES with prejudice this action against defendants;

2.  DIRECTS the clerk to enter judgment in favor of defendants SunTrust Mortgage, Inc.,
    Mortgage Electronic Registration Systems, Inc., and Federal National Mortgage
    Association and against plaintiff Florida Ruiz in that there is no just reason to delay to
    enter such judgment given that the Ms. Ruiz' claims against these defendants and their
    alleged liability are clear and distinct from claims against and liability of other
    defendants.  *See* F.R.Civ.P. 54(b);

3.  ORDERS Ms. Ruiz, no later than July 31, 2012, to file papers to show cause why this
    Court should not dismiss this action against any remaining defendants, including The
    Wolf Firm.

**This Court ADMONISHES Ms. Ruiz that this Court will dismiss this action against any**

**remaining defendants if Ms. Ruiz fails to comply with this order and fails to file timely papers to**

**show cause why this Court should not dismiss this action against any remaining defendants.**

IT IS SO ORDERED.

**Dated:     July 24, 2012                          /s/ Lawrence J. O'Neill**
                                                 UNITED STATES DISTRICT JUDGE